FRECKER & SHIM LLC
2160 North Central Road, Suite 112
Fort Lee, New Jersey 07024
(855) 373-2537
Attorneys for Third Party Plaintiff

|  |  |  |
|---|---|---|
| | X | UNITED STATES DISTRICT COURT |
| VITA-PURE, INC., DELTA LABORATORIES INC., VNH, LLC, and BEST NUTRITIONALS, LLC, | : : : : | FOR THE DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO.: 14-cv-7831 (WJM)(MF) |
| Plaintiffs, | : : | |
| v. | : : | **THIRD PARTY COMPLAINT** |
| SAMIR BHATIA, APARNA BHATIA a/k/a APARNA PATIL, PRIANKA BHATIA, RAVINDER BHATIA, HNB CONCEPTS, LLC, H&B CONCEPTS, GOOD BRANDS, LLC, HEALTH CONCEPTS, LLC, JAGDAMBE INDUSTRIES and JOHN DOES 1-20 and XYZ CORP. 1-10, | : : : : : : : : | **AND DEMAND FOR JURY TRIAL** |
| Defendants. | : : | |
| | X | |
| SAMIR BHATIA, | : : | |
| Third Party Plaintiff, | : : : | |
| v. | : : | |
| ACHYUT SAHASRABUDHE a/k/a ACHYUT SAHASRA, | : : : | |
| Third Party Defendant. | : : | |
| | X | |

Third Party Plaintiff SAMIR BHATIA ("Bhatia"), by and through his attorneys

Frecker & Shim LLC, by way of Third Party Complaint against Third Party Defendant

ACHYUT SAHASRABUDHE a/k/a ACHYUT SAHASRA ("Sahasra"), states as follows:

1.      Bhatia is an individual residing at 135 Montgomery Street, Apartment 20F, Jersey City, New Jersey 07302.

2.      Upon information and belief, Sahasra is an individual, residing at 631 Tremont Avenue, South Plainfield, New Jersey 07080.

3.      VNH, LLC ("VNH") is a Delaware limited liability company, having its principal place of business located at 20 Lafayette Place, Kenilworth, New Jersey 07033.

4.      Upon information and belief, Vita-Pure, Inc. is a New Jersey limited liability company, having its principal place of business located at 410 West 1st Avenue, Roselle, New Jersey 07203.

5.      Vita-Pure, Inc. is a company engaged in the business of private-label manufacturing of vitamin products.

6.      Vita-Pure, Inc. does not own any brands or sell any products under its own brands.

7.      Vita-Pure, Inc. manufactures products for other companies' brands and labels.

8.      VNH is a company engaged in the business of e-commerce of selling vitamin products on the Internet.

9.      Vita-Pure, Inc. is a third party vendor that manufactures the vitamin products for VNH.

10.     VNH is a client of Vita-Pure, Inc.

11.     Vita-pure, Inc. is owned by Sahasra.

12.     VNH is co-owned by Bhatia and Sahasra.

13.     At all times relevant, Bhatia was and still is part owner of VNH.

14.     At all times relevant, Sahasra was and still is part owner of VNH.

15.     At all times relevant, Bhatia and Sahasra were and still are business partners of

VNH.

## I.   THE ORAL PARTNERSHIP AGREEMENT
## BETWEEN BHATIA AND SAHASRA TO CREATE VNH

16.   Bhatia grew up in India and learned to give authority and respect to the elderly.

17.   As he was growing up, Bhatia learned that giving authority and showing respect to the elderly is paramount in Indian culture.

18.   Upon information and belief, Sahasra grew up in India.

19.   Upon information and belief, Sahasra understands the Indian culture where the younger person is expected to give authority and show respect to the elderly.

20.   Upon information and belief, Sahasra is approximately 40 years older than Bhatia.

21.   Upon information and belief, Sahasra is older than Bhatia's father.

22.   In or about 2009, Bhatia was pursuing his MBA degree in digital marketing in New York.

23.   In or about 2009, while Bhatia was pursuing his MBA degree, Sahasra hired Bhatia as a part-time marketing intern of Vita-Pure, Inc.

24.   Given Sahasra's age and experiences, Bhatia showed respect to Sahasra and considered Sahasra as his mentor.

25.   Given Bhatia's successful internship, in or about 2011, Sahasra hired Bhatia as a part-time marketing manager of Vita-Pure, Inc.

26.   Throughout Bhatia's employment at Vita-Pure, Inc., Sahasra acknowledged Bhatia's marketing and business abilities.

27.   Throughout Bhatia's employment at Vita-Pure, Inc., Bhatia gave authority and showed respect to Sahasra.

28.   Through the MBA program, Bhatia learned about e-commerce and digital

marketing.

29.     Through the MBA program, Bhatia learned more about the vitamins and dietary supplements industry and realized a huge potential for online marketing and selling the products on e-commerce.

30.     In or about June 2010, Bhatia completed his MBA program.

31.     In or about 2010, Bhatia proposed an e-commerce project to Sahasra to create new vitamin brands and sell them on the Internet.

32.     Based on Bhatia's aforesaid proposal, in or about 2010, Bhatia and Sahasra entered into an agreement to launch an e-commerce business as business partners (hereinafter referred to as the "Partnership Agreement").

33.     Pursuant to the Partnership Agreement, Bhatia and Sahasra agreed to share the profits of the e-commerce business.

34.     As part of the Partnership Agreement, with respect to partnership profit-sharing, Bhatia and Sahasra agreed to share the profits of VNH as follows: (1) In the event that the annual sales were less than $1 Million, there would be no profit-sharing to Bhatia or Sahasra but all profit, if any, would be invested back to VNH; (2) In the event that the sales reach between $1 Million and $2 Million, Bhatia would receive 25% of the profit as his partnership share and Sahasra would receive 75% of the profit as his partnership share; and (3) In the event that the sales reach $2 Million or more, Bhatia and Sahasra would each receive equal shares of 50% of the profit as their partnership share.

35.     As part of the Partnership Agreement, with respect to the operation of VNH, Bhatia and Sahara agreed to share the business responsibilities, according to their individual experiences and abilities, as follows: (1) Sahasra would oversee the manufacturing of the VNH

brand products by Vita-Pure, Inc., and manage the company finance, including, without limitation, reporting taxes, managing the payrolls and issuing checks for payments and partnership share drawings; and (2) Bhatia would interview and hire employees, and provide the marketing strategies, including, without limitation, website and web store developments for the e-commerce business.

36.    As part of the Partnership Agreement, with respect to ownership of VNH, Bhatia and Sahasra agreed that they have equal ownership interest of VNH.

37.    Pursuant to the Partnership Agreement, in or about 2010, Bhatia and Sahasra launched VNH to engage in the aforesaid e-commerce business.

38.    Bhatia created two private brands, Vita Pure and Best Naturals, for VNH to sell through its e-commerce business.

39.    Bhatia launched the e-commerce sites for VNH, including VNH's own websites, VitaNherbs.com and ShopBestNaturals.com, and VNH's Amazon web store, VitaNherbs (VitaNherbs.com, ShopBestNaturals.com and VitaNherbs collectively as the "VNH E-commerce Sites").

40.    VNH used Vita-Pure, Inc. to manufacture products under the two private-label brands, Vita Pure and Best Naturals.

41.    On the VNH E-commerce Sites, VNH sold the Vita Pure-brand product, the Best Naturals-brand products, and approximately 200 other brand products that VNH bought from distributors to sell to its online customers.

42.    Essentially, VNH was an online retail store that sold various brand products in addition to its own brand products.

43.    VNH was initially located on the same premises as Vita-Pure, Inc. until the end of

December 2012.

44.     Sahasra's office for Vita-Pure, Inc. was on the same premises where VNH was initially located.

45.     Subsequently, VNH's business grew so rapidly that VNH moved to a new warehouse/office space in January 2013.

46.     At all times relevant, all of the books and financial records for VNH were kept and maintained in Sahasra's office at Vita-Pure, Inc.

47.     All of the books and financial records for VNH were kept and maintained in Sahasra's office at Vita-Pure, Inc. even after VNH moved to a new warehouse/office space in January 2013.

48.     At all relevant times, VNH's books and financial records were under Sahasra's control.

49.     At all relevant times, Vita-Pure, Inc.'s books and financial records were under Sahasra's control.

50.     Upon information and belief, Sahasra unilaterally co-mingled the finances and assets of VNH and Vita-Pure, Inc. without knowledge or consent of Bhatia.

51.     Between 2010 and 2011, Bhatia worked approximately 10-12 hours per day for months to build the business for VNH as a business partner of Sahasra.

52.     Between 2010 and 2011, Bhatia worked approximately 10-12 hours per day for months to build the business for VNH as a part owner of VNH.

53.     Bhatia's contribution to VNH includes, without limitation, creating multiple company brands, opening a web store on Amazon, launching websites, and hiring a back-end office in India.

54.     Bhatia fully performed his duties and obligations under the terms of the Partnership Agreement.

55.     Bhatia's contribution to VNH quickly led to a substantial and consistent increase in profit for VNH.

56.     VNH did not compensate Bhatia for Bhatia's work building the e-commerce business of VNH as a business partner of Sahasra.

57.     Despite the fact that Bhatia fully performed his duties and obligations as a partner of VNH and that Bhatia's skills and expertise were essential to VNH's success, VNH and Sahasra refused to pay Bhatia the profit share to which he was entitled under the Partnership Agreement.

58.     Upon information and belief, in 2011, VNH had approximately $1 Million in sales.

59.     Pursuant to the Partnership Agreement, in or about early 2012, Bhatia is entitled to his 25% partnership share of the VNH profits for year 2011.

60.     Sahasra proposed that the VNH profits for 2011 be reinvested into the VNH so that the company could grow, and further proposed that the partnership share of the profit be paid out later.

61.     In reliance of Sahasra's representation that Bhatia's 2011 percentage of the profit share would be paid at a later date, Bhatia agreed to defer payment of the 2011 profit share to which he was entitled.

62.     Upon information and belief, Sahasra never intended to pay Bhatia his profit share percentage for 2011, and instead intended to and did use the funds for his own benefit.

63.     To date, Sahasra has failed to pay Bhatia his partnership share of the VNH profits

for year 2011.

64.     Upon information and belief, in 2012, VNH had approximately $5.7 Million in sales and $1 Million in profit.

65.     Pursuant to the Partnership Agreement, Bhatia is entitled to his 50% partnership share of the VNH profits for year 2012, which amounted to $500,000.

66.     Out of Bhatia's rightful partnership share of $500,000 for year 2012, Sahara provided Bhatia with only $200,000.

67.     The $200,000 was paid to Bhatia in two (2) checks issued by VNH in the following manner: (i) $50,000 in late 2012; and (ii) $150,000 in January 2013.

68.     In or about January 2013, Sahasra promised Bhatia that he would pay the remaining $300,000 of Bhatia's $500,000 partnership share for year 2012, within six (6) months of the January 2013 payment.

69.     Despite Sahasra's failure to pay the full amount of the profit share, Bhatia continued to work substantial number of hours to continue to build the VNH business because he trusted Sahasra to fulfill his promises and to fulfill his fiduciary duties to VNH and to Bhatia.

70.     Despite Sahasra's failure to pay the full amount of the profit share, Bhatia continued to work substantial number of hours to continue to build the VNH business because he trusted Sahasra's promise and representation that Bhatia is a part owner of VNH.

71.     Based on the mentoring relationship Bhatia had with Sahasra, he never suspected that Sahasra would fail to pay him the VNH profits share percentages that the two had agreed on.

72.     To date, Sahasra has failed to pay Bhatia the remaining $300,000 of his partnership share of the VNH profits for year 2012.

73.     Upon information and belief, Sahasra never intended to pay Bhatia his full profit

share percentage for 2012, and instead intended to and did use the funds for his own benefit.

74.     Upon information and belief, in 2013, VNH's sales exceeded $6 million, and as such, Bhatia is entitled to a 50% profit share of VNH's profit.

75.     To date, Sahasra has failed to pay Bhatia his partnership share of the VNH profits for the year 2013.

76.     Upon information and belief, Sahasra never intended to pay Bhatia his profit share percentage for 2013, and instead intended to and did use the funds for his own benefit.

77.     Upon information and belief, in 2014, VNH's sales exceeded that of its sales in 2013 of $6 million.

78.     Bhatia is entitled to a 50% share of the profit of VNH for the year 2014.

79.     To date, Sahasra has failed to pay Bhatia his partnership share of the VNH profits for the year 2014.

80.     Upon information and belief, Sahasra never intended to pay Bhatia his profit share percentage for 2014, and instead intended to and did use the funds for his own benefit.

81.     VNH's success was possible due to Bhatia's marketing efforts, including creating multiple brands, opening a web store on Amazon, where the majority of VNH sales occurred, and hiring a back-end service office in India, where the labor cost is less expensive and thereby reducing the expenses.

82.     Upon information and belief, the total amount that Sahasra and VNH owe Bhatia for his partnership share for the past four (4) years from 2011 to 2014 is more than $2 Million.

83.     By failing to pay Bhatia the profit share to which he is entitled pursuant to the Partnership Agreement, Sahasra breached the Partnership Agreement and wrongfully kept Bhatia's share of the VNH profits for years 2011, 2012, 2013, and 2014.

## II.   SAHASRA'S FRAUDULENT SCHEME

84.   VNH sold approximately 90% of its products on its Amazon web store VitaNherbs.

85.   In or about September 2012, while Bhatia was in India on a business trip, Sahasra came up with a scheme to increase the profit margin on VNH's e-commerce business by defrauding VNH's customers.

86.   Unbeknownst to Bhatia, Sahasra instructed one of his employees to ship cheaper and more inferior products to a customer who had ordered more expensive brand products on VNH's Amazon web store, VitaNherbs.

87.   Upon information and belief, the customer of VNH received cheaper and more inferior products than what she ordered from VNH's Amazon web store.

88.   Upon information and belief, the customer, who received cheaper and more inferior products than what she ordered, submitted a complaint to Amazon.

89.   In or about November 2012, as a result of Sahasra's intentional fraud, Amazon removed VNH's seller privileges and shut down VNH's web store, VitaNherbs.

90.   When Amazon removed VNH's seller privileges, Bhatia was in India.

91.   When Bhatia returned from India, he learned of Sahasra's fraud and Amazon's decision.

92.   In an effort to save VNH's Amazone web store business, Bhatia immediately filed an appeal to Amazon to recover VNH's seller privileges.

93.   Amazon denied Bhatia's appeal.

94.   As a result of Sahasra's fraud, VNH is forever banned from operating any web store on Amazon.

95.     VNH is no longer able to sell directly to consumers via its Amazon web store, VitaNherbs.

96.     VNH is no longer able to open a new Amazon web store to sell its products directly to Amazon customers.

97.     As a result of losing its Amazon web store, VNH's sales significantly dropped for several months.

98.     As a result of Sahasra's fraud, the value of the good will of VNH was damaged.

99.     In or about late 2013 and early 2014, Sahasra and Bhatia decided to get a business loan to expand the VNH business.

100.    In an effort to get a business loan for VNH, in about late 2013 and early 2014, Sahasra and Bhatia went to Biz2Credit office and met Corey Falkin, then the Vice President Business Development of Biz2Credit.   At the meeting, Sahasra told Corey Falkin about the existence and terms of the Partnership Agreement, including the partnership share of VNH profits and equal ownership of VNH between Sahasra and Bhatia.

101.    In order to obtain a business loan, VNH was required to submit a business plan with its loan application.  Corey Falkin sent Bhatia a questionnaire for business plan and Bhatia sent him the detailed information.  Bhatia received a finalized business plan from Corey Falkin. Upon receipt and review of same, Bhatia approved it and sent it to Sahasra and Corey via email. The next day, Sahasra told Bhatia that he also approved the business plan that Bhatia sent the day before.

102.    Upon information and belief, subsequently, Sahasra, unilaterally and without authority, changed the VNH business plan without advising Bhatia or getting Bhatia's consent.

### III.    SAHASRA'S LABOR LAW VIOLATIONS AND UNLAWFUL INTERFERENCE WITH BHATIA'S BUSINESS

103.    In early 2013, because VNH was banned from operating any web store on Amazon, Sahasra and Bhatia decided to launch two new companies: Best Nutritionals, LLC ("Best Nutritionals") and Health Concepts, LLC ("Health Concepts").

104.    Health Concepts is a Delaware limited liability company having its principal place of business at 135 Montgomery Street, Apartment 20F, Jersey City, New Jersey 07302.

105.    Upon information and belief, Best Nutritionals is a Delaware limited liability company corporation having its principal place of business located at 20 Lafayette Place, Kenilworth, New Jersey 07033.

106.    Sahasra and Bhatia decided to operate Best Nutritionals and Health Concepts independently from each other.

107.    Sahasra is the sole member and owner of Best Nutritionals.

108.    Best Nutritionals mainly sells its own Best Naturals-brand vitamin products.

109.    Bhatia is the sole member and owner of Health Concepts.

110.    Health Concepts sells the vitamin and nutritional products of 200 different brands.

111.    As a new company, Health Concepts was able to open its own web store on Amazon and buy certain products from VNH and sell them on its Amazon web store.

112.    As a new company, Best Nutritionals was able to open its own web store on Amazon and buy certain products from VNH to sell them on its Amazon web store.

113.    At all times relevant, Health Concepts was a customer of VNH.

114.    Sahasra did not pay for any operational costs or inventory for Health Concepts or its web stores.

115.    Vita Pure, Inc. did not pay for any operational costs or inventory for Health

Concepts or its web stores.

116.    VNH did not pay for any operational costs or inventory for Health Concepts or its web stores.

117.    Health Concepts owns and operates a web store called VitaminsHub-US on Amazon for its operation in the United States.

118.    Health Concepts owns and operates a web store on Amazon called VitaminsHub-CA for its operation in Canada.

119.    At all relevant times, Sahasra did not have any authority to conduct business on behalf of Health Concepts or its web stores and/or websites.

120.    Health Concepts routinely purchased certain products from VNH to sell on Health Concepts' own web store and websites, including VitaminsHub.com.

121.    From April 2013 to August 2014, Health Concepts paid VNH $7,267,690.26 for its purchase of VNH inventories.

122.    Upon information and belief, in 2013, VNH's sales exceeded $6 Million, mainly from its sales to its customer, Health Concepts.

123.    Given the flourishing business and increased sale of VNH, VNH developed a need for an executive level manager to oversee its marketing and ecommerce.

124.    In or about February 2014, Bhatia was hired as a marketing and ecommerce manager of VNH.

125.    Bhatia worked for VNH as its marketing and ecommerce manager from February 2014 to August 2014.

126.    From February 2014 to August 2014, Bhatia was a manager as well as a business partner of VNH.

13

127.    Sahasra and Bhatia agreed that Bhatia would be paid $90 per hour for Bhatia's work as a marketing and ecommerce manager for VNH for 10 hours each week.

128.    To date, Bhatia has been paid for his work as marketing and ecommerce manager at VNH for two weeks only, with two checks for $900 each.

129.    With respect to Bhatia's employment at VNH as a marketing and ecommerce manager, Bhatia had not been paid wages for approximately 26 weeks.

130.    With respect to Bhatia's employment at VNH as a marketing and ecommerce manager, Bhatia has not been paid approximately $23,400 in wages.

131.    On or about August 21, 2014, Bhatia resigned from employment with VNH in part because it persistently failed to pay his wages.

132.    Despite his resignation as an employee of VNH and despite Sahasra's breaches of the Partnership Agreement, Bhatia's business partnership with Sahasra and part ownership of VNH remains in full force and effect.

133.    Immediately upon Bhatia's resignation as a marketing and ecommerce manager, Sahasra directed VNH employees not to ship any products to Health Concepts.

134.    Immediately upon Bhatia's resignation as a marketing and ecommerce manager, Sahasra directed VNH employees to cut off all communication with Bhatia.

135.    Immediately upon Bhatia's resignation as a marketing and ecommerce manager, Sahasra demanded that Bhatia not enter VNH's premises.

136.    Immediately upon Bhatia's resignation as a marketing and ecommerce manager, Sahasra denied Bhatia access to VNH assets, including, without limitation, inventory and equipment, (collectively "VNH's Assets"), of which Bhatia has part ownership.

137.    In or about late August 2014, Bhatia contacted Sahasra to discuss VNH business

but Sahasra refused to respond.

138.    Health Concepts, HNB Concepts and Good Brands LLC (collectively as "Bhatia's Companies") had ongoing business relationships with their suppliers.

139.    Upon information and belief, in or about September 2014, Sahasra sent a letter in VNH letterhead to the suppliers of Bhatia's Companies ("Sahasra's Letter to Suppliers").

140.    Sahasra's Letter to Suppliers inaccurately stated that Bhatia was no longer associated with VNH.

141.    Sahasra's Letter to Suppliers inaccurately stated that there was an ongoing police investigation into Bhatia's activities.

142.    Sahasra had made a false report to the police regarding Bhatia.

143.    Sahasra's Letter to Suppliers caused several suppliers to discontinue their business relations with Bhatia and Bhatia's Companies.

144.    In addition to Bhatia's employment at VNH, Bhatia was a part-time employee of Vita-Pure, Inc. from 2011 to 2014.

145.    In January 2015 in connection with this litigation, Bhatia became aware of a September 20, 2012 Employment Agreement that Sahasra alleges Bhatia signed (the "Forged Employment Agreement").

146.    Although Bhatia was an employee of Vita Pure from 2011 to 2014, Bhatia never entered into a written employment agreement with Sahasra, VNH, Vita-Pure, Inc. or any other entity at any time.

147.    Before January 2015, Bhatia had never seen the Forged Employment Agreement. Moreover, Bhatia did not sign the Forged Employment Agreement.

148.    Upon information and belief, Sahasra forged Bhatia's signature on the Forged

Employment Agreement.

149.    As a result, the Forged Employment Agreement is of no force and effect.

150.    Moreover, Sahasra's forgery caused Bhatia to retain and pay for a document reviewer to prove that the signature on the document is not Bhatia's signature in order to defend against Sahasra's frivolous claims against Bhatia based on the Forged Employment Agreement.

151.    Sahasra caused business disruption and loss of sale to Bhatia's Companies.

## COUNT ONE
## (FRAUD IN THE INDUCEMENT)

152.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

153.    Every representation and statement Sahasra made regarding Bhatia's entitlement to partnership share of VNH profits pursuant to the Partnership Agreement was false when made to Bhatia.

154.    Sahasra made the aforesaid false statements of fact with actual knowledge of their falsity and never intended to grant Bhatia profit sharing pursuant to the Partnership Agreement.

155.    Sahasra made the statements regarding profit sharing pursuant to the Partnership Agreement, intending and knowing that Bhatia would rely on the representation and to induce Bhatia to work for and invest in VNH.

156.    Bhatia reasonably relied on the aforesaid misrepresentations, and as a result of that reliance, Bhatia suffered damages.

157.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover all unpaid partnership shares of VNH profits pursuant to the Partnership Agreement for the years 2011, 2012, 2013, and 2014, and to recover additional damages, reasonable attorney's fees, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT TWO
## (FRAUD IN THE INDUCEMENT)

158.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

159.    Every representation and statement Sahasra made regarding Bhatia's employment with VNH as a marketing and ecommerce manager was false when made to Bhatia.

160.    Sahasra made the aforesaid false statements of fact with actual knowledge of their falsity and never intended to grant Bhatia compensation for Bhatia's employment with VNH.

161.    Sahasra made the statements regarding Bhatia's employment as a marketing and ecommerce manager, intending and knowing that Bhatia would rely on the representation and to induce Bhatia to work for and invest in VNH.

162.    Bhatia reasonably relied on the aforesaid misrepresentations, and as a result of that reliance, Bhatia suffered damages.

163.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover all unpaid wages, and to recover additional damages, reasonable attorney's fees, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT THREE
## (UNJUST ENRICHMENT)

164.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

165.    Sahasra is unjustly enriched at Bhatia's expense because he failed to pay Bhatia for the work he performed for his partnership share of the VNH profits.

166.    As a result of Bhatia's marketing efforts and skills, including Bhatia's creation of multiple brands, opening a web store on Amazon where a majority of VNH sales occurred, and

hiring and facilitating a back-end service office in India where the labor cost is less expensive, VNH's profit increased each year.

167.    Sahasra benefitted from VNH's resulting profit increase while refusing to provide Bhatia with his partnership share of VNH profits, thereby unjustly increasing Sahasra's own partnership share of VNH's profits.

168.    As a partner of VNH, Bhatia was entitled to receive a partnership share of VNH profits as a result of his performance and the services rendered as a partner.

169.    To date, Sahasra has not paid Bhatia the remaining $300,000 of his partnership share of the VNH profits for year 2012, and has not paid Bhatia his partnership share of the VNH profits for years 2011, 2013, and 2014.

170.    These circumstances in which Bhatia has not been recompensed for his services as a partner of VNH are such that equity and good conscience require Sahasra to make restitution.

171.    Accordingly, Third Party Plaintiff Bhatia is entitled to recoup his profit share of VNH profits for the years 2011, 2012, 2013, and 2014, and to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fee, costs, and punitive damages from Third Party Defendant Sahasra.

**COUNT FOUR**
**(UNJUST ENRICHMENT)**

172.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

173.    Sahasra is unjustly enriched at Bhatia's expense because he failed to pay Bhatia the wages for the work he performed as a marketing and ecommerce manager between February 2014 and August 2014.

174.    As a result of Bhatia's work as a marketing and ecommerce manager, VNH's sale and/or profit increased.

175.    Sahasra benefitted from VNH's resulting sale and/or profit increase while refusing to pay Bhatia his wages, thereby unjustly increasing Sahasra's own partnership share of VNH's profits.

176.    As a marketing and ecommerce manager of VNH, Bhatia was entitled to receive a wage.

177.    To date, Sahasra has not fully paid Bhatia the wages for Bhatia's work as a marketing and ecommerce manager of VNH.

178.    These circumstances in which Bhatia has not been recompensed for his services as a marketing and ecommerce manager of VNH are such that equity and good conscience require Sahasra to make restitution.

179.    Accordingly, Third Party Plaintiff Bhatia is entitled to recoup his unpaid wages, and to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fee, costs, and punitive damages from Third Party Defendant Sahasra.

**COUNT FIVE**
**(BREACH OF CONTRACT)**

180.    Bhatia repeats and reallages each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

181.    Pursuant to the Partnership Agreement, Sahasra was obligated to compensate Bhatia as a partner to VNH for the years 2011, 2012, 2013, and 2014.

182.    Sahasra materially breached the Partnership Agreement in 2011, when he failed to pay Bhatia his partnership share for the profits VNH made for that year.

183.    Sahasra materially breached the Partnership Agreement in 2012, when he failed to pay Bhatia the $300,000.00 due from his partnership share of $500,000.00.

184.    Sahasra materially breached the Partnership Agreement in 2013, when he failed to pay Bhatia his partnership share for the profits VNH made for that year.

185.    Sahasra materially breached the Partnership Agreement in 2014, when he failed to pay Bhatia his partnership share for the profits VNH made for that year.

186.    As a result of aforesaid material breaches, Bhatia has been and continues to be damaged.

187.    Sahasra's breach was the proximate cause of Bhatia's damages.

188.    Bhatia performed his contractual duties pursuant to the Partnership Agreement, applying his marketing skills that led to the success of VNH.

189.    Accordingly, Third Party Plaintiff Bhatia is entitled to recoup his profit share of VNH for the years 2011, 2012, 2013, and 2014, and to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fees, costs, and punitive damages from Third Party Defendant Sahasra.

**COUNT SIX**
**(BREACH OF CONTRACT)**

190.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

191.    According to the Partnership Agreement, Sahasra agreed to share 50% ownership of VNH with Bhatia.

192.    Sahasra materially breached the Partnership Agreement when he denied Bhatia is rightful 50% ownership to VNH.

193.    As a result of aforesaid material breaches, Bhatia has been and continues to be

damaged.

194.    Sahasra's breach was the proximate cause of Bhatia's damages.

195.    Bhatia performed his contractual duties pursuant to the Partnership Agreement, applying his skills that led to the success of VNH.

196.    Accordingly, Third Party Plaintiff Bhatia is entitled to recoup his profit share of VNH for the years 2011, 2012, 2013, and 2014, and to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fees, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT SEVEN
## (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

197.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

198.    By virtue of the acts specified in this Third Party Complaint, Sahasra breached the Partnership Agreement with Bhatia.

199.    Sahasra acted in bad faith when he intentionally and maliciously withheld Bhatia's partnership share pursuant to the Partnership Agreement for years 2011, 2012, 2013, and 2014.

200.    Sahasra acted in bad faith when he intentionally and maliciously denied Bhatia his rightful 50% ownership of VNH.

201.    Sahasra acted in bad faith when he breached the Partnership Agreement.

202.    Sahasra's bad faith denied Bhatia the benefit of his profit share to the Partnership Agreement.

203.    Sahasra's bad faith denied Bhatia the benefit of his 50% ownership of VNH.

204.    In breaching the Partnership Agreement, Sahasra violated the covenant of good

faith and fair dealing implied in every contract under New Jersey law.

205.    As a result of Sahasra's breach of the covenant of good faith and fair dealing, Bhatia sustained damages.

206.    Accordingly, Third Party Plaintiff Bhatia is entitled to recoup his profit share of VNH for the years 2011, 2012, 2013, and 2014, and to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fees, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT EIGHT
## (ACCOUNTING OF PROFITS)

207.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

208.    Sahasra has retained compensation belonging to Bhatia for his partnership share of VNH for the years 2011, 2012, 2013, and 2014.

209.    Sahasra maintains all the books and financial records of VNH at the office of Vita-Pure, Inc., which Bhatia does not have access to.

210.    Bhatia is unable to accurately ascertain how much of his partnership share has been withheld by Sahasra for the four (4) years from 2011 to 2014.

211.    In addition, as a partner to Sahasra and 50% owner of VNH, Bhatia is unable to view financial documents and records that he is rightfully entitled to.

212.    As such, Bhatia is entitled to a full and accurate accounting of all monies and profits received by VNH for the years 2011, 2012, 2013, and 2014.

## COUNT NINE
## (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)

213.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party

Complaint as if fully set forth at length herein.

214.   Bhatia had ongoing business relationships with the suppliers of Bhatia's Companies.

215.   Sahasra intentionally and maliciously interfered with the business relationships between Bhatia and his suppliers.

216.   If not for Sahasra's interference with Bhatia's relationship with his suppliers, Bhatia and his Companies would have received the anticipated economic benefits of their contracts with said suppliers.

217.   As a result of Sahasra's tortious interference, Bhatia lost the business relationships of the suppliers.

218.   As a result of Sahasra's tortious interference, Bhatia and Bhatia's Companies were severely damaged and prevented from conducting business.

219.   Accordingly, Third Party Plaintiff Bhatia is entitled to recover all damages, including, but not limited to, actual damages, compensatory damages, a reasonable attorney's fee, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT TEN
## (BREACH OF FIDUCIARY DUTY)

220.   Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

221.   Sahasra had a fiduciary duty to Bhatia, his business partner, to use reasonable skill and care and not profit at the expense of the partnership or partners.

222.   Sahasra breached his fiduciary duty to Bhatia.

223.   Sahasra breached his fiduciary duty to Bhatia when he profited at Bhatia's expense by withholding Bhatia's partnership share from him for the years 2011, 2012, 2013, and

2014.

224.    Sahasra breached his fiduciary duty to Bhatia when he failed to use reasonable care by intentionally defrauding a customer of VNH, thereby resulting in Amazon terminating the web store.

225.    Sahasra breached his fiduciary duty to Bhatia by damaging the good-will of VNH.

226.    As a result of Sahasra's breach of fiduciary duty, Bhatia was damaged.

227.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover all damages, including, but not limited to, actual damages, compensatory damages, reasonable attorney's fee └, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT ELEVEN
## (PROMISSORY ESTOPPEL)

228.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

229.    Sahasra entered into a clear and definite agreement with Bhatia to share the profit of VNH with him.

230.    Sahasra entered into the agreement with Bhatia with the expectation that Bhatia would rely on it.

231.    Bhatia reasonably relied on the agreement based on the representations that Sahasra made that they were business partners.

232.    Based on Sahasra's representations, Bhatia committed substantial time and energy to build VNH in anticipation that he would share in the profits of VNH as Sahasra had promised. During that time, Bhatia did not seek other employment or other business opportunities as a result of his reliance on Sahasra's false misrepresentations.

233.    Bhatia relied on the terms of the agreement that he would receive his partnership

share of VNH profitss for the years of 2011, 2012, 2013, and 2014.

234.    Bhatia relied on the terms of the agreement with Sahasra to his detriment.

235.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover all damages, including, but not limited to, actual damages, compensatory damages, a reasonable attorney's fee, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT TWELVE
### (CONVERSION)

236.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

237.    Pursuant to the Partnership Agreement, Bhatia is entitled to 50% ownership of VNH's Assets.

238.    As 50% owner of VNH, Bhatia is entitled to immediate possession of 50% of VNH's Assets.

239.    When Sahasra denied Bhatia access to VNH's premises, he exercised dominion over Bhatia's right and denied him his access to 50% of his ownership of VNH's Assets.

240.    Sahasra wrongfully interfered with Bhatia's right when he denied Bhatia access to his rightful property of 50% of VNH's Assets.

241.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover all damages, including, but not limited to, actual damages, compensatory damages, a reasonable attorney's fee, costs, and punitive damages from Third Party Defendant Sahasra.

## COUNT THIRTEEN
### (FORGERY)

242.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

243.    Sahasra forged Bhatia's signature on the Forged Employment Agreement, dated September 20, 2012.

244.    Bhatia never saw the Forged Employment Agreement before commencement of this action.

245.    Bhatia never signed the Forged Employment Agreement.

246.    Sahasra forged the Forged Employment Agreement in order to commit fraud and deceive this Court in his favor and at the prejudice of Bhatia's rights.

247.    As a result of Sahasra's forgery, Bhatia sustained damages.

248.    Accordingly, Bhatia is entitled to recover actual damages, a reasonable attorney's fee, costs, and punitive damages.

**COUNT FOURTEEN**
**(VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW**
**N.J.S.A. 34:11-4.1, *et seq.*)**

249.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

250.    From February 2014 to August 2014, Bhatia was employed by VNH and Sahasra as a marketing and ecommerce manager of VNH.

251.    At all relevant times, Sahasra was an owner and principal of VNH who had management authority over the company.

252.    As an owner and principal of VNH, Sahasra was Bhatia's employer from February 2014 to August 2014. (*See* N.J.S.A. 34:11-4.1(a).

253.    Sahasra and VNH agreed to pay Bhatia wages in the amount of $90/hour for 10 hours per week for his work as a marketing and ecommerce manager of VNH.

254.    Bhatia worked as a Marketing & Ecommerce manager of VNH for 28 weeks, but

was paid wages for only two weeks of work. Sahasra and VNH failed to pay Bhatia wages for 26 weeks of work.

255.    Generally, an employer may not withhold any portion of an employee's wages. (*See* N.J.S.A. 43:11-4.4(a)).

256.    Sahasra and VNH's failure to pay Bhatia wages was knowing and willful.

257.    Sahasra and VNH's failure to pay Bhatia wages violated the New Jersey Wage Payment Law. As an owner and principal of VHN, Sahasra is liable to Bhatia for failure to pay wages in his individual capacity and in his capacity as an owner and principal of VNH.

258.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover damages against Third Party Defendant Sahasra for his failure to pay Bhatia's wages.

## COUNT FIFTEEN
## (VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201, *et seq.*)

259.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

260.    From February 2014 to August 2014, Bhatia was employed by VNH and Sahasra as a marketing and ecommerce manager of VNH.

261.    At all relevant times, VNH and Sahasra were engaged in interstate commerce or in an industry or activity affecting interstate commerce.

262.    At all relevant times, Sahasra was an owner and principal of VNH who had management authority over the company.

263.    As an owner and principal of VNH, Sahasra was Bhatia's employer from February 2014 to August 2014.

264.    Sahasra and VNH agreed to pay Bhatia wages in the amount of $90/hour for 10

hours per week for his work as a marketing and ecommerce Manager of VNH.

265.    Bhatia worked as a marketing and ecommerce Manager of VNH for 28 weeks, but was paid wages for only two weeks of work. Sahasra and VNH failed to pay Bhatia wages for 26 weeks of work

266.    Sahasra and VNH's failure to pay Bhatia was willful under the Fair Labor Standards Act (FLSA).

267.    Accordingly, Third Party Plaintiff Bhatia is entitled to recover damages against Sahasra for his willful failure to pay wages, including, but not limited to, compensatory damages, liquidated damages, attorneys' fees, and punitive damages.

**COUNT SIXTEEN**
**DECLARATORY JUDGMENT**

268.    Bhatia repeats and realleges each of the foregoing paragraphs of the Third Party Complaint as if fully set forth at length herein.

269.    For all the reasons alleged herein, Bhatia is rightfully 50% owner of VNH, LLC and should be entitled to a partnership share from VNH pursuant to the Partnership Agreement.

270.    For all the reasons alleged herein, Sahasra is effectively prohibiting Bhatia from his ownership of VNH and from his partnership share of VNH.

271.    Accordingly, Bhatia demands judgment (1) declaring that he is the rightful owner of 50% of VNH, LLC; (2) declaring that the Partnership Agreement is valid; and (3) declaring that he is entitled to his partnership share of VNH profits pursuant to the Partnership Agreement.

## PRAYER FOR RELIEF AS TO ALL COUNTS

**WHEREFORE**, Third Party Plaintiff Bhatia prays for judgment against Third Party Defendant Sahasra as follows:

A.      Ordering that Third Party Defendant Sahasra produce all of his computers and his company VNH's computers and his company Vita-Pure, Inc.'s computers for a forensic inspection, duplication and examination pursuant to a protocol to be established by the Court;

B.      Ordering that a constructive trust be imposed on revenues made by VNH, LLC, until such time as the Court has determined what revenues of VNH Bhatia is entitled to;

C.      Ordering that Third Party Defendant Sahasra produce all of his books, assets information and financial records for forensic accounting, duplication and examination pursuant to a protocol to be established by the Court;

D.      Declaring that Third Party Plaintiff Bhatia has a 50% ownership interest in VNH, LLC, including its websites VitaNherbs.com and ShopBest Naturals.com;

E.      Declaring that Third Party Plaintiff Bhatia is entitled to the partnership share of VNH profits pursuant to the Partnership Agreement;

F.      Awarding Third Party Plaintiff Bhatia statutory damages;

G.      Awarding Third Party Plaintiff Bhatia compensatory damages and punitive damages in an amount to be determined at trial;

H.      Awarding Third Party Plaintiff Bhatia liquidated damages;

I.      Awarding Third Party Plaintiff Bhatia all costs and fees, including, reasonable attorneys' fees, incurred relating to this action;

J.      Awarding Third Party Plaintiff Bhatia pre-judgment and post-judgment interest; and

K.      For such other, further and different relief which this Court deems just and proper.

                                        FRECKER & SHIM LLC

                            By:     /s/ Haejin A. Shim
                                    _____
                                    Haejin A. Shim
                                    Attorneys for Third Party Plaintiff
                                    SAMIR BHATIA
                                    2160 North Central Road, Suite 112
                                    Fort Lee, New Jersey 07024
                                    (855) 373-2537 (telephone)
                                    (212) 352-0204 (facsimile)
                                    haejin@freckershim.com

Dated: February 6, 2015

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Civil Rule 38.1,

Third Party Plaintiff hereby demands a trial by jury on all issues so triable herein.

                                        FRECKER & SHIM LLC

                            By:     /s/ Haejin A. Shim
                                    _____
                                    Haejin A. Shim
                                    Attorneys for Third Party Plaintiff
                                    SAMIR BHATIA
                                    2160 North Central Road, Suite 112
                                    Fort Lee, New Jersey 07024
                                    (855) 373-2537 (telephone)
                                    (212) 352-0204 (facsimile)
                                    haejin@freckershim.com

Dated: February 6, 2015


TO:     Achyut Sahasrabudhe a/k/a Achyut Sahasra

        Lauren X. Topelsohn, Esq.
        Steven I. Adler, Esq.
        Mandelbaum Salsburg, P.C.
        (via ECF)

30