NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **VITA-PURE, INC. ET AL.,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**SAMIR BHATIA, ET AL.**<br><br>        **Defendant.** | Civ. No. 2:14-7831 (WJM)<br><br>**OPINION** |

## **WILLIAM J. MARTINI, U.S.D.J.:**

In an 18-count complaint asserting causes of action under both federal and state law, Plaintiffs – who are a group of companies in the business of marketing and selling vitamin products – allege that Defendant Samir Bhatia, some of his family members, and certain business entities that he operates, engaged in a wide-ranging fraudulent scheme designed to enrich Bhatia and his associates at Plaintiffs' expense. This matter comes before the Court on Plaintiffs' motion, by way of an order to show cause, for a preliminary injunction. For the reasons set forth below, the motion is **DENIED**.

## **I.    BACKGROUND**

Plaintiffs in this action are a number of companies owned by Achyut Sahasra ("Sahasra") that specialize in the manufacturing, marketing, and sale of vitamins and dietary supplements. Specifically, Plaintiff Vita-Pure Inc. manufactures the products under two trademarked brands, Vita Pure and Best Naturals, whereas Plaintiff VNH is responsible for overseeing the companies' e-commerce business. Plaintiff Best Nutritionals, LLC is an e-commerce business that sells vitamin products.

### A.  Alleged Employment Agreement and Bhatia's Role

According to the Complaint, Vita-Pure hired Defendant Samir Bhatia ("Bhatia") to help manage Plaintiffs' e-commerce businesses. The Complaint alleges that Bhatia and Plaintiff Vita-Pure entered into an employment agreement (hereinafter, "the Employment

1

Agreement") that contained a non-compete provision and forbade Bhatia from sharing Plaintiffs' confidential and proprietary information. Bhatia denies ever signing the Employment Agreement;[1] instead, Bhatia alleges that he and Sahasra verbally agreed to enter into a partnership in which the two individuals would share profits (hereinafter, "the Partnership Agreement"). Defendants allege that Sahasra has failed to pay Bhatia his share under the Partnership Agreement. Plaintiffs, however, deny the existence of any profit-sharing agreement.

Bhatia's main role was to oversee the following three websites (hereinafter, "the Websites"): (1) ShopBestNaturals.com; (2) VitaNherbs.com; and (3) VitaminsHub.com. He was also entrusted to oversee three of Plaintiffs' Amazon Webstores (hereinafter, "the Webstores") that sold Plaintiffs' products on an Amazon.com platform: (1) GoodHealthStore; (2) VitaminsHub-US; and (3) VitaminsHub-CA. Bhatia contends – and Plaintiffs do not appear to dispute – that VitaminsHub-US and VitaminsHub-CA were registered to Bhatia, whereas GoodHealthStore was registered to Sahasra.

### B. Alleged VitaminsHub Agreement and "Hijacking" of Plaintiffs' Websites

Plaintiffs allege that Bhatia also entered into an oral revenue sharing agreement (hereinafter, "the VitaminsHub Agreement") under which Bhatia agreed to transfer all revenues his Webstores received to Plaintiff VNH. Plaintiffs allege that Bhatia refused to transfer revenues to VNH in violation of the VitaminsHub Agreement. Bhatia, however, contends that he never entered into the VitaminsHub Agreement. According to the Complaint, Bhatia continues to operate VitaminsHub-US and VitaminsHub-CA in direct competition with Plaintiffs.

Plaintiffs also allege that Bhatia fraudulently diverted customer payment accounts on VitaNHerbs.com and ShopBestNaturals.com to entities that either he or his family members controlled. The Complaint similarly argues that Bhatia has used his company – Defendant H&B Concepts – to manipulate inventory shipments to the disadvantage of Sahasra-controlled GoodHealthStore and to the advantage of Bhatia-controlled VitaminsHub-US. However, Bhatia flat out denies hijacking Plaintiffs' domain names or diverting their revenues to his bank accounts, and similarly denies manipulating inventory shipments. Specifically, Bhatia contends that Sahasra's misconduct caused the website ShopBestNaturals.com to lose its customer e-payment privileges. Bhatia insists that he "rescued" the site by linking it to Defendant HNB Concepts' e-payment account, thereby allowing it to continue to receive payments from customers.

---

[1] Bhatia insists that his signature on Plaintiffs' copy of the purported Employment Agreement is a forgery.

### C. Alleged Violations of the Employment Agreement

After a falling out in August 2014, Bhatia stopped associating with Plaintiffs and Sahasra. As stated previously, the purported Employment Agreement between Bhatia and Vita-Pure contained (1) a non-compete provision; and (2) a non-disclosure agreement. Plaintiffs allege that since leaving Vita-Pure, Bhatia has violated the non-compete provision by continuing to run his Amazon Webstores, VitaminsHub-US and VitaminsHub CA, along with other entities. Moreover, he allegedly violated the non-disclosure provision by, *inter alia*, using Plaintiffs' confidential customer lists. Plaintiffs further allege that Bhatia has changed the passwords for two of the Websites, which has prevented Plaintiffs' employees from gaining administrative access to them. Bhatia flat out denies these allegations, and argues that he never signed the Employment Agreement. Moreover, Bhatia asserts that Plaintiffs do not have any confidential or proprietary information since all of the e-commerce initiatives were his ideas. He further contends that he does not possess administrative access to Plaintiffs' e-commerce sites.

### D. Other Allegations

Additionally, the Complaint alleges that Bhatia stole a computer from Plaintiffs' offices. It further contends that Bhatia fraudulently registered three of Plaintiffs' trademarks in his own name. In response, Bhatia asserts that he never stole the computer – instead, he is entitled to it because he is a business partner of VNH. He also contends that Plaintiffs were well aware of his trademark applications and never voiced any objections when he applied for them in 2012.

### E. The Instant Action

In late-December 2014, Plaintiffs filed a Complaint under several causes of action, including civil RICO, fraud, breach of contract, and misappropriation. At the same time, Plaintiffs made an *ex parte* application to this Court for a temporary restraining order to be entered immediately. The Court denied the application, but issued an order setting an expedited briefing schedule for Plaintiffs' preliminary injunction motion. Plaintiffs' motion seeks to impose a variety of restraints on Defendants. Plaintiffs request that this Court enter restraints that would: (1) prohibit Defendants from using or destroying the computer Bhatia allegedly stole; (2) prohibit Defendants from using Plaintiffs' confidential or proprietary information for their own personal gain; (3) prohibit Defendants from using the trademarks Defendants allegedly stole; (4) prohibit Defendants from soliciting or contacting any of Plaintiffs' suppliers, customers, vendors or service providers; (5) prohibit Defendants from transferring or causing damage to any of the e-commerce sites;[2] (6)

---

[2] In a March 27, 2015 letter to the Court, Plaintiffs claim they have identified additional domain names that should be subject to an injunction. *See* ECF. No. 47.

prohibit Defendants from using, reviewing, or transmitting e-mails on Plaintiffs' e-mail system; and (7) require Bhatia to comply with the Employment Agreement.

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy that is not routinely granted. *See, e.g., Groupe SEB USA v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014); *Hoxworth v. Blinder, Robinson Co. Inc.*, 903 F.2d 186, 189 (3d Cir. 1990) (the preliminary injunction remedy "must be reserved for extraordinary circumstances…."). Moreover, "the decision to grant or deny a preliminary injunction is committed to the sound discretion of the district court." *U.S. v. Price*, 688 F.2d 204, 2010 (3d Cir. 1982). In order to obtain the extraordinary remedy of a preliminary injunction, Plaintiffs must show (1) they are likely to succeed on the merits; (2) denial will cause them irreparable harm; (3) granting the injunction will not result in irreparable harm to Defendants; and (4) granting the injunction is in the public interest. *Nutrasweet Co. v. Vit-Mar Enterprises*, 176 F.3d 151, 153 (3d Cir. 1999). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (citations omitted). The Court concludes that Plaintiffs have failed to demonstrate likelihood of success on the merits or irreparable harm in the absence of an injunction. Consequently, their motion for a preliminary injunction will be denied.

### A. Likelihood of Success on the Merits

At this early stage of the litigation, Plaintiffs have failed to demonstrate a likelihood of success on the merits. After reviewing the papers and holding oral argument, it is apparent to this Court that there are a myriad of factual disputes that have a direct bearing on the viability of Plaintiffs' claims. These disputes include, but are not limited to:

- Whether Bhatia entered into the Employment Agreement;
- Whether Bhatia entered into the VitaminsHub Agreement;
- Whether Bhatia and Sahasra entered into the Partnership Agreement;[3]
- Whether Bhatia fraudulently diverted customer payments to his own accounts;
- Whether Bhatia operated businesses in competition with Plaintiffs.

In short, the parties severely dispute the nature of their business relationship. "A preliminary injunction cannot be issued when there are disputed issues of fact." *Hunterdon Transformer Co. v. Cook*, No. 89-3132, 1990 WL 10342, *2 (D.N.J. Feb. 6, 1990) (citing

---

[3] If a partnership agreement did exist between Bhatia and Sahasra, an additional layer of factual disputes would follow, including whether Bhatia violated fiduciary duties owed to the partnership under N.J.S.A. 42:1A-24 and whether Sahasra owes Bhatia a percentage of company revenues.

*Charles Simkin & Sons, Inc. v. Massiah*, 289 F.2d 26, 29 (3d Cir. 1961)); *see also Collick v. Weeks Marine, Inc.*, 397 Fed.Appx. 762, 764 (3d Cir. 2010) (preliminary injunction is inappropriate where there is an "abundance of contradictory facts on both sides of the record."). As described above, there are a number of factual disputes that preclude a determination that Plaintiffs have established a likelihood of success on the merits. Therefore, Plaintiffs' motion for a preliminary injunction must be denied.

    B. <u>Irreparable and Imminent Injury</u>

Even if Plaintiffs could show a likelihood of success on the merits, their motion must still be denied because they have failed to demonstrate irreparable and imminent injury. To be entitled to the extraordinary remedy of a preliminary injunction, demonstrating the mere possibility of harm is not enough. Instead, a plaintiff must show an *imminent* risk of irreparable injury that cannot wait to be redressed until trial is over. *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 Fed.Appx. 559, 563 (3d Cir. 2012) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)).

Plaintiffs have failed make such a showing in this case. As a threshold matter, Bhatia and Sahasra had their falling out in August 2014, but Plaintiffs did not move for a preliminary injunction until four months later. A several month delay in bringing a preliminary injunction motion can undermine an asserted claim of imminent, irreparable harm. *See, e.g., PTT, LLC v. Gimme Games, et al.*, No. 13-7161, 2014 WL 5343304, *3 (D.N.J. Oct. 20, 2014); *Ultimate Trading Corp. v. Daus*, No. 07-4203, 2007 WL 3025681, *5 (D.N.J. Oct. 12, 2014). Here, much of the alleged wrongdoing Plaintiffs have attributed to Bhatia – including the operation of competitive sites and the retention of access to Plaintiffs' email system – was known to Plaintiffs several months before they filed the instant motion.[4] Plaintiffs have failed to adequately explain for the delay in bringing this motion, further undermining their claim of imminent, irreparable harm.[5]

---

[4] Plaintiffs also ask this Court to restrain Defendants from using any of the trademarks that are at issue in this case. First, Plaintiffs did not object when Bhatia registered those marks in 2012, which again undermines any claim of imminent, irreparable harm. Second, an injunction is not appropriate where a plaintiffs' property interest in a mark is questionable because the defendant applied for and received federal registration of the mark prior to the litigation. *Daus*, 2007 WL 3025681, at *4.

[5] Moreover, the primary purpose of a preliminary injunction is to preserve the status-quo. *See Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). Because several months have elapsed between the parties' falling out and the filing of this motion, issuing a preliminary injunction now would only serve to alter the status-quo by significantly constraining Defendants' ability to conduct business. This is yet another factor that weighs against the issuance of a preliminary injunction. *See PTT, LLC*, 2014 WL 5343304, at *5.

Setting aside Plaintiffs' delay, other factors weigh against a finding of imminent, irreparable harm.  For example, Plaintiffs ask this Court to enter restraints that would prevent Defendants from using, transferring, or causing damage to a variety of assets; those assets include a laptop computer, domain names to certain websites,[6] and revenues generated from those sites.  However, Plaintiffs have made no showing that irreparable harm to those assets is imminent.  Instead, Plaintiffs vaguely assert that the Court should issue an injunction because of Defendants' "fraudulent conduct and their international connections."  For a preliminary injunction to be appropriate "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) (citing *Arcierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994)).  Because Plaintiffs' claim of irreparable harm is merely speculative in nature, they are not entitled to a preliminary injunction.[7]

### III. CONCLUSION

Because Plaintiffs have not made the requisite showing for a preliminary injunction, their motion is **DENIED**.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 1st, 2015**

---

[6] In a letter submitted to the Court after briefing on the motion had already concluded, Plaintiffs attached an on-line "screen shot" that appears to show one of the domain names at issue being offered for sale.  According to Plaintiffs, the posting establishes that Defendants are engaged in the transfer and/or destruction of assets.  *See* ECF No. 47.  Defendants strongly contest Plaintiffs' claim, and argue that Defendants are not responsible for the posting and that nothing in the screenshot proves otherwise.  Defendants further claim that the registration history associated with the website and domain name shows that the "for sale" posting is most likely attributable to the previous owner of the domain, not Defendants.   *See* ECF No. 48.  Again, the myriad of factual disputes here precludes the Court from finding that Plaintiffs have met their burden of proving imminent, irreparable harm.

[7] In light of Plaintiffs' expressed sense of urgency, Magistrate Judge Mark Falk has issued an order indicating that the case will be scheduled for expedited discovery.